## AUSTIN *v.* UNITED STATES (No. 422).[1]

1. COVERINGS—SECTION 19, CUSTOMS ADMINISTRATIVE ACT OF 1890.

In the construction of section 19, customs administrative act of 1890, following the rule *ejusdem generis* laid down in United States *v.* Nichols (186 U. S., 298), the words "coverings of any kind," appearing in that section, must be taken to include coverings previously named therein, or coverings similar in kind, and used only to convey solids.

2. SAME—CONTAINERS OF LIQUIDS AND SEMILIQUIDS.

Containers of liquids or semiliquids do not come within the descriptive language "Cartons, cases, crates, boxes, sacks, and coverings of any kind" as these words stand in said section 19, customs administrative act of 1890.

United States Court of Customs Appeals, April 10, 1911.

APPEAL from a decision of the Board of United States General Appraisers, G. A. 7082
(T. D. 30872).

[Reversed.]

*Walden & Webster, Curie, Smith & Maxwell* ( *W. Wickham Smith* and *Henry J. Webster* of counsel) for appellants.

*D. Frank Lloyd,* Assistant Attorney General ( *Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER and DE VRIES, Judges.

BARBER, Judge, delivered the opinion of the court:

This case involves the appeals of Austin, Nichols & Co. and various other importers whose protests were heard with that of Austin,

---

[1] Reported in T. D. 31508 (20 Treas. Dec., 757).

Nichols & Co. by the Board of General Appraisers. The importations appear to have been made in the years of 1907, 1908, and 1909, and the cases were decided by the board on the 11th day of August, 1910.

The sole question involved is whether the value of certain containers, enumerated by the board as follows: (1) Wooden casks containing coal-tar colors in the form of paste; (2) hermetically sealed cans containing Brussels sprouts, and earthenware receptacles known as terrines containing pâté de foie gras; (3) earthenware jars containing strawberry and other jams, and stoneware jars containing marmalade; (4) hermetically sealed tins containing asparagus; (5) tin cans containing varnish; (6) hermetically sealed tin cans containing pineapples in chunks; (7) barrels containing certain alizarin pastes and other pastes—shall be included in the dutiable value of the merchandise contained in the same, under section 19 of the customs administrative act of 1890. The collector included in the dutiable value of the merchandise the value of such containers and the Board of General Appraisers sustained the action of the collector, following what they considered the controlling effect of the decision of the Circuit Court of Appeals in Austin, Nichols & Co. v. United States (171 Fed. Rep., 79), to which we shall later more particularly refer.

The importers claim that said containers are not dutiable at the same rate as the contents, or otherwise, but are free of duty. They assign as their reason for this contention that section 19 of said customs administrative act relates only to cartons, cases, crates, boxes, sacks, and similar coverings, suitable only for covering dry and solid merchandise, and that it has no application to containers of liquids and semiliquids.

With this was heard the case of United States v. Edward Kimpton (infra, p. 477), in which a brief opinion is concurrently filed, and the discussion here will refer to and determine the issues there.

The Supreme Court in the case of United States v. Nichols (186 U. S., 298), decided June 2, 1902, considered the meaning of section 19 of the customs administrative act of 1890, which we quote:

SEC. 19. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quantities, at the time of exportation to the United States, in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale, including the value of all cartons, cases, crates, boxes, sacks, and coverings of any kind, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subject if separately imported.

That the words "value" or "actual market value" whenever used in this act or in any law relating to the appraisement of imported merchandise shall be construed to mean the actual market value or wholesale price as defined in this section.

The Circuit Court of Appeals for the Second Circuit had submitted to the Supreme Court the following question:

Should the value of the bottles filled with ad valorem goods be added to the dutiable value of their contents, under section 19 of the customs administrative act of 1890, to make up the dutiable value of the imported merchandise?

It appears from the opinion of the Supreme Court that the merchandise referred to in the question submitted was imported in glass bottles holding not more than 1 pint and filled with goods dutiable at ad valorem rates. The Supreme Court answered the submitted question in the negative.

Thereafter the Circuit Court of Appeals for the Second Circuit in the case of Kimpton *v*. United States (171 Fed. Rep., 78), decided May 19, 1909, held in accordance with what it deemed to be the binding authority and effect of the decision in the case in the Supreme Court above referred to, that the value of stone bottles should not be added to the value of the imported ink contained therein; and in the case of Austin, Nichols & Co. *v*. United States (171 Fed. Rep., 79), decided the same day, the same Circuit Court of Appeals held that the value of tin cans containing vegetables and the value of stoneware receptacles containing fish paste and pâté de foie gras should be added to the value of the contents of such containers by virtue of said section 19 of the customs administrative act of 1890. The court distinguished the case from the Kimpton case, just decided by it, by saying that the Kimpton case involved liquids in bottles and the Nichols case the question of solids in tin cans and terrines. Reference to this claimed distinction will be made in connection with a later discussion of the Nichols case.

The contention of the importers in both cases before us proceeds upon the theory that the decision of the Supreme Court referred to is decisive of the same in their favor, while the contention of the United States is that said opinion when properly understood is not controlling in either of the cases. More fully stated, the contention of the importers is that the said Circuit Court of Appeals has correctly applied the decision of the Supreme Court in deciding the case of Kimpton *v*. United States, and that that decision is controlling in the Kimpton case before us. And further that the Circuit Court of Appeals in the Nichols case did not correctly apply the rule laid down by the Supreme Court, so far at least as it applied to containers of the kind before us; that if correctly applied it would have resulted in a contrary conclusion in said Circuit Court of Appeals, and therefore that the decision of the board in the Nichols case before us should be reversed. The United States specifically claims that the Circuit Court of Appeals

did not correctly apply the holding of the Supreme Court in the Nichols case to the Kimpton case; that if so applied that case would have been decided the other way, which results in the claim that we should reverse the judgment of the board in the Kimpton case before us. And further that the last-mentioned Nichols case in the Circuit Court of Appeals was correctly there decided and is controlling here, and therefore that we should affirm the judgment of the board in the Nichols case.

We think the decision of the Supreme Court if it be found directly applicable to the questions in either of the cases before us should control our action therein and proceed to inquire what was there decided.

The Supreme Court, by Justice Brown in the first part of the opinion, held that—

The customs administrative act of 1890 was not a tariff act, but was intended to simplify the laws in connection with the collection of revenues and to provide certain rules and regulations with respect to the assessment and collection of ad valorem duties and the remedies of importers, and not to interfere with any duties theretofore specifically imposed or thereafter to be imposed upon merchandise imported; * * * that section 19 was intended to provide a general method for the assessment of ad valorem duties and to require the value of all cartons, cases, crates, boxes, sacks, and ''coverings of any kind'' to be included in such valuation.

He then proceeded to construe the meaning of the words ''coverings of any kind,'' evidently assuming that the words ''cartons, cases, crates, boxes, and sacks'' did not include glass bottles, and said:

We think the rule *ejusdem generis* applies to the words ''coverings of any kind,'' and that glass bottles which are never in ordinary parlance spoken of as coverings for the liquor contained in them is such a clear departure from the preceding words as to exempt them from the operation of the section, provided at least they are taxed under a different designation. It is very singular that if Congress intended to include under the words ''coverings of any kind'' vessels used for containing liquors, it should not have made use of the words casks, hogsheads, bottles, demijohns, carboys, or words of similar signification. The inference is irresistible that by the word ''coverings'' it only intended to include those previously enumerated and others of similar character used for the carriage of solids and not liquids. Webster defines a covering as ''Anything which covers or conceals, as a roof, a screen, a wrapper, clothing,'' etc., but to speak of a liquid as being covered by a bottle which contains it is such an extraordinary use of the English language that nothing but the most explicit words of a statute could justify that construction.

So, too, by cartons, cases, crates, boxes, and sacks we understand those encasements which are not usually of permanent value and such as are ordinarily used for the convenient transportation of their contents. Indeed, it is quite possible that they were made taxable in a general way by the customs administrative act in order that if they were so made as to be of further use after their contents were removed they might not have escaped taxation. The ordinary cartons, cases, crates, boxes, and sacks are of no value after their contents are removed, but in order that they should not escape taxation altogether if they were of permanent value they were included in the general terms of the customs administrative act.

After having thus construed said section 19 the court proceeded to discuss subsequent legislation for the purpose, as we think, of pointing

out that the construction which it had just placed upon the section was in accordance with what must have been the understanding of Congress, as evinced by such subsequent enactments.

The language used by the court in introducing this part of its discussion seems to admit no other purpose. The court said:

The subsequent legislation upon the same subject tends to show that Congress intended to preserve the distinction between bottles and ordinary coverings and to make a special provision for them.

It is true that the concluding portion of the opinion limits the same to glass bottles, and it manifestly is so limited, because those were the precise containers involved in the answer to the submitted question, but we think it does not limit the construction that the court held should be given to section 19 as laid down in the earlier part of the opinion to the effect that the rule of *ejusdem generis* applies to the words "coverings of any kind" and that the *inference is irresistible that Congress intended only to include in the words "coverings of any kind" those previously enumerated and others of similar character used for the carriage of solids and not of liquids.*

The issue raised by the submitted question plainly was whether glass bottles containing liquids were included in the words cartons, cases, crates, boxes, sacks, and coverings of any kind, and the court said, in effect, that glass bottles were never, in ordinary parlance, spoken of as coverings for the liquor contained in them, and that it was very singular, if Congress intended to include vessels used for containing liquors under the words "coverings of any kind," it should not have made use of the words which in ordinary parlance signified containers of liquids, such as casks, barrels, hogsheads, bottles, demijohns, carboys, or of other words of similar signification. Such language is utterly inconsistent with any interpretation of this opinion other than that it deliberately determined that containers of liquids were not referred to by the use of the words cartons, cases, crates, boxes, and sacks in said section 19, and we think that the Supreme Court intentionally based its negative answer to the submitted question upon the ground that such words in the section applied to containers of solids and not of liquids, that the rule of *ejusdem generis* limited the words "coverings of any kind" to similar containers of solids, that an examination of decisions of the courts and of subsequent legislation which it proceeded to make confirmed its previous conclusion that such was the intention of Congress, and we think the construction so given to the section is clearly in accord with the common understanding of the use and meaning of the words construed.

We are unable to perceive how any distinction can be made for the purposes of the issue before us between glass bottles and stone bottles. This results in our holding that in the Kimpton case in the Circuit Court of Appeals a correct conclusion was reached, that the judgment

of the Board of General Appraisers in the Kimpton case before us was correct and should be affirmed.

The Circuit Court of Appeals in the Nichols case (171 Fed. Rep., *supra*) attempted, as has been already seen, to distinguish between the containers in that and the Kimpton case by saying that the Kimpton case involved stone bottles used as containers of liquids, while the Nichols case related to tin cans and terrines used as containers of solids. This statement appears to be based upon the record sent up from the Board of General Appraisers. The board, however, had not found that the merchandise was solid and not liquid, and it appears from their opinion that amongst such merchandise there were fruit; jam, pineapples, liquid gum, and sizing. It is apparent that the board did not consider this merchandise to be solid, some clearly could not have been, and the character of its containers mentioned in their opinion warrants the inference that it was substantially like the merchandise in the Nichols case now before us for determination. On this subject the board in the case now before us says in its opinion that "the question involved is precisely the same" as that passed upon by the Circuit Court of Appeals in the Nichols case.

Counsel for the United States in the case before us premises his argument with the statement that some of the merchandise is a liquid, and the entire discussion of the case upon the part of counsel for both sides proceeds upon the theory that all the merchandise is liquid or semiliquid and all the containers water-tight and some of them hermetically sealed.

In view of all this we feel constrained to hold, either that the learned Circuit Court of Appeals was mistaken in the statement that the difference between the Kimpton case and the Nichols case, then before it, was that in the one case the merchandise contained was a liquid and the other a solid, or that the Nichols case so far as that aspect of it is concerned is not an authority here and that the Board of General Appraisers ought not to have so regarded it.

In the Nichols case, however, the court further said that it believed that it was the intention of Congress by said section 19 to require the value of all coverings to be included in the value of ad valorem goods and to support its conclusion as applicable to the goods before it referred to what it well characterized as the able opinion of General Appraiser Somerville for the board in that case. By referring to this opinion it will be found that the learned general appraiser in substance advanced the reasoning that such had been the uniform view of that section as expressed in the decisions of the courts and generally in customs practices until the decision of the Supreme Court in the Nichols case and that his interpretation of that opinion was that it—

went off on the ground that Congress had legislated for bottles *eo nomine* as a separate subject of duty,  *  *  *  and so much as was said by the learned judge with

reference to the general condition of the word "coverings," while entitled to great respect is not to be considered as binding upon this board or the courts, especially when opposed to uniform decisions running through a series of not less than 10 or 12 years.

As we read the decision of Appraiser Somerville, if he had given to the opinion of the Supreme Court the effect we think it should receive as herein set forth the judgment of the board in that case would have been the other way, and hence this part of the decision of the Circuit Court of Appeals can not be an authority here.

But the Circuit Court of Appeals further said in the Nichols case that—

even if the doctrine of *ejusdem generis* be applicable so that the section reads "cartons, cases, crates, boxes, sacks, and similar coverings of any kind," we fail to understand why the coverings here involved may not be included. Webster defines "case" as "a covering, box, or sheath; that which incloses or contains." It is not easy to perceive why a tin box containing vegetables if not actually a case is not similar to one. So, too, an earthenware receptacle containing meat paste is a case, or if not is a covering similar to a case.

It already appears that in our opinion the decision of the Supreme Court has limited the containers referred to in section 19 to such as are used for the holding of solids and not of liquids, and which results in the conclusion that as to the containers before the Circuit Court of Appeals used for holding liquids the judgment of that court, in our opinion, failed to give full force to the conclusion of the Supreme Court in the Nichols case. Nor do we think it makes any difference whether the merchandise is a liquid or a semiliquid. Semiliquids must from their very nature demand receptacles for the carriage of the same that possess the requisite qualities to enable them to both contain and retain liquids, else the liquid portion of the semiliquid contained therein will escape, and hence, as we have already said in substance, we think section 19 must be held, in view of the opinion of the Supreme Court, to exclude from the containers therein mentioned those used for containing semiliquids, which, as we have already pointed out, is the case of all the containers referred to in the Nichols case now before us.

The statement of the Circuit Court of Appeals to the effect that if a tin box containing vegetables or an earthenware receptacle containing meat paste, is not a case, each is similar thereto, must be taken in connection with the fact that the learned court erroneously assumed that the containers before it held solids and not liquids, and therefore is not authority here. But we doubt if in common parlance the word "case" when referring to containers is applicable to an hermetically sealed or tightly stoppered, air-tight, or water-tight container. We think it generally refers to a receptacle, a box, a bag, a sheath, or a covering used for the purpose of keeping, holding, containing, inclosing, or covering solids, and does not refer to a small container required

and used for the purpose of carrying, keeping, and preserving liquids or semiliquids, the successful use of which container depends not only upon its ability to prevent the liquid portions of the contents from escaping, but also in many instances depends upon its further ability to prevent the outer air from coming in contact with the liquid or semiliquid substance contained therein.

But, however this may be, the conclusion we have reached as to the meaning of the decision of the Supreme Court in the case referred to and the controlling effect to be given the same require us to hold that the judgment of the Board of General Appraisers in the case be, and it is, *reversed*.

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and DE VRIES, Judges, concur.