### UNITED STATES v. PEABODY & Co. (No. 725).[1]

COVERINGS OF LIQUIDS AND SEMILIQUIDS, TARIFF ACT OF 1897.

Section 19, customs administrative act of 1890, provides that there shall be included in the dutiable value of merchandise subject to an ad valorem rate of duty the value of all cartons, crates, boxes, sacks, and coverings of any kind. The construction of this clause has been established in the light of the rule *ejusdem generis*, and the containers named have been limited to coverings of dry or solid merchandise. This construction is now adhered to.—United States v. Nichols (186 U. S., 298); Austin v. United States (1 Ct. Cust. Appls., 465; T. D. 31508).

### United States Court of Customs Appeals, April 1, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7238 (T. D. 31717).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Frank L. Lawrence* on the brief), for the United States.

*Walden & Webster* (*W. Wickham Smith* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

This appeal is brought by the Government to establish the status, under the tariff act of 1897, of certain containers which were brought into this country filled with ad valorem contents of a liquid or semiliquid character.

Under that act the appellees imported various consignments of pineapples, Scotch kippered herrings, Yarmouth bloaters, oil geranium reunion, oil patchoule, and oil pennyroyal, all in hermetically sealed tins; chowchow and anchovy paste, in stone jars; alizarin green S. W. paste, in barrels; and rosewater, in a metal drum.

[1] Reported in T. D. 32383 (22 Treas. Dec., 571).

The imported goods were severally dutiable at ad valorem rates, and in each instance the collector added the value of the container to the value of its contents in order to find the dutiable valuation upon which the respective rates of duty should be assessed.

The importers protested against that action of the collector, claiming that the value of the containers should not be added to the value of their contents for the purpose of fixing their dutiable valuation, but that the appropriate duty should be assessed upon the value of the contents alone, without regard to the value of the containers.

The protest was heard by the Board of General Appraisers, and was sustained. The Government now applies for a reversal of that decision.

The issue thus presented requires an interpretation of section 19 of the customs administrative act of June 10, 1890. That section is here copied in full:

SEC. 19. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quantities, at the time of exportation to the United States, in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale, including the value of all cartons, cases, crates, boxes, sacks, and coverings of any kind, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subject if separately imported. That the words "value," or "actual market value" whenever used in this act or in any law relating to the appraisement of imported merchandise shall be construed to mean the actual market value or wholesale price as defined in this section.

The foregoing section provides that whenever imported merchandise is subject to an ad valorem rate of duty the duty shall be assessed upon the actual market value thereof, at the time of exportation, in the principal markets of the country from whence imported, including the value of all cartons, cases, crates, boxes, sacks, and coverings of any kind, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The Government contends that the foregoing section required the collector, in assessing ad valorem duties upon the importations at bar, to add the value of the containers, namely, the hermetically sealed tins, the wooden barrels, the stone jars, and the iron drum, to the value of their respective contents, in order to find the dutiable value upon which the ad valorem rates were to be assessed; and that the action of the collector to that effect should have been sustained by the board.

The importers take issue with the foregoing claim.  They contend that the ad valorem duties should have been assessed upon the value of the contents only, and that the decision of the board o that effect should be affirmed.

In the case of United States v. Nichols (186 U. S., 298), section 19, above copied, received an interpretation by the Supreme Court of the United States.  The case came to that court from the Circuit Court of Appeals for the Second Circuit, which being in doubt with regard to the question of law arising therein, desired the instruction of the Supreme Court for its proper decision.  The importation was made under the tariff act of 1894, and consisted of ad valorem goods contained in glass bottles holding not more than 1 pint, and upon those facts the following question was certified to the Supreme Court:

Should the value of the bottles filled with ad valorem goods be added to the dutiable value of their contents, under section 19 of the customs administrative act of 1890, to make up the dutiable value of the imported merchandise?

The court upon consideration answered this question in the negative, basing that answer upon two reasons, which may be briefly summarized as follows: In the first place, that section 19 did not include the glass bottles in question because such bottles were made dutiable by eo nomine provisions of the tariff act of 1894, as they had been by the tariff act of 1883, and those specific provisions should govern the articles in question rather than the merely regulative provisions of the administrative act; and in the second place, that the provisions of section 19 did not include the glass bottles in question, because those provisions related only to coverings of dry or solid contents, and not to bottles nor any other containers of liquid contents.

Each of these two separate reasons was complete within itself; each one was directly determinative of the issue before the court; and because of them, and of each of them, the Supreme Court held that the glass bottles in question were not governed by section 19, and that their value should not be added to the value of their contents to make up the dutiable valuation for ad valorem assessment.

The foregoing statements are sustained by the following extract from the opinion of the Supreme Court in the case above mentioned:

Though the tariff act of 1883 is not directly in issue in this case, it is pertinent to inquire whether the sections above cited respecting duties upon glass bottles were repealed by section 19 of the customs administrative act.  We are of opinion that they were not.  The customs administrative act was not a tariff act, but, as its title indicates, was intended "to simplify the laws in connection with the collection of the revenues" and to provide certain rules and regulations with respect to the assessment and collection of duties and the remedies of importers and not to interfere with any duties theretofore specifically imposed or thereafter to be imposed upon merchandise imported.  Section 19 was intended to provide a general method for the assessment

of ad valorem duties and to require the value of all cartons, cases, crates, boxes, sacks, and coverings of any kind to be included in such valuation. We think the rule *ejusdem generis* applies to the words "coverings of any kind," and that glass bottles, which are never in ordinary parlance spoken of as coverings for the liquor contained in them, is such a clear departure from the preceding words as to exempt them from the operation of the section, provided at least they are taxed under a different designation. It is very singular that if Congress intended to include under the words "coverings of any kind" vessels used for containing liquors it should not have made use of the words casks, barrels, hogsheads, bottles, demijohns, carboys, or words of similar signification. The inference is irresistible that by the words "coverings" it only intended to include those previously enumerated and others of similar character used for the carriage of solids and not of liquids. Webster defines a covering as "anything which covers or conceals, as a roof, a screen, a wrapper, clothing," etc.; but to speak of a liquid as being *covered* by the bottle which contains it is such an extraordinary use of the English language that nothing but the most explicit words of a statute could justify that construction.

So, too, by cartons, cases, crates, boxes, and sacks we understand those incasements which are not usually of permanent value and such as are ordinarily used for the convenient transportation of their contents. Indeed, it is quite possible that they were made taxable in a general way by the customs administrative act in order that, if they were so made as to be of further use after their contents were removed, they might not escape taxation. The ordinary cartons, cases, crates, boxes, and sacks are of no value after their contents are removed, but in order that they should not escape taxation altogether if they were of permanent value they were included in the general terms of the customs administrative act.

In the case of Austin *v.* United States (1 Ct. Cust. Appls., 465; T. D. 31508), this court had before it certain containers of liquid or semiliquid contents similar to those now at bar. Upon the authority of the Supreme Court decision, just above cited, this court held that such containers, like the glass bottles involved in that case, were not within the purview of section 19 of the customs administrative act, and that the value of such containers should not be added to that of their contents to make up the dutiable valuation upon which the ad valorem rates were to be assessed. The appellant now asks the court to overrule its decision in the foregoing case; and in that behalf appellant contends that the Supreme Court decision in the Nichols case does not properly bear the interpretation placed upon it by this court in the Austin case; or if it does, that this court should decline to follow it.

However, upon a consideration of the issue presented, the court reaches a conclusion in accord with that announced in the Austin case.

On June 10, 1890, when the section under review was enacted, the law upon the subject of the usual coverings of ad valorem goods was contained in section 7 of the tariff act of March 3, 1883. By its terms it was expressly provided that in ascertaining the value of goods to be imported the value of the usual and necessary sacks, crates, boxes, or coverings of any kind should not be estimated as

part of the value of the goods in determining the amount of duties for which they were liable.

In Meyers v. Shurtleff (23 Fed. Rep., 577, 580), being a case under the act of 1883, the Circuit Court for the District of Oregon reviewed the prior enactments upon this subject, and said:

> From this statement of congressional action or legislative habit on this subject, it may fairly be inferred that the expense of the "coverings" of imported merchandise is never to be included in ascertaining the "dutiable value" thereof, unless the statute expressly so provides.

The foregoing observation is little more than a statement that duties are not to be levied by construction, but only by express legislative enactment. It therefore appears that both the common law of the subject, using that term by analogy, and also the express provisions of section 7 of the tariff act of March 3, 1883, inhibited the addition of the value of usual coverings to the value of their contents in ascertaining the dutiable valuation of ad valorem importations, and that this condition obtained at the passage of the customs administrative act of 1890.

Section 19 of that act amended the existing law upon the subject by providing that there should be included within the dutiable valuation of ad valorem merchandise "the value of all cartons, cases, crates, boxes, sacks, and coverings of any kind, and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States."

In construing this section it is at once apparent that the specified coverings, namely, cartons, cases, crates, boxes, and sacks, are all invariably used as coverings for dry or solid contents only. If Congress had designed to include containers for liquids within that provision, it is certainly reasonable to believe that some such container would appear by name in this list. The fact that no such container is named in the schedule is most significant against appellant's contention. Nor is this statement answered by a reference to the following provision for "coverings of any kind." That phrase, while nominally general, is an associate phrase standing in conjunction with the preceding list or schedule, and under the rule of *ejusdem generis* it should be limited to coverings of the general character of those specified therein. The principal characteristic possessed in common by the coverings specified in the section is their exclusive use as coverings for dry or solid contents only. The residuary phrase should not be extended beyond that meaning; to do so would be a violation of the rule of *ejusdem generis* for the purpose of providing a duty by construction. The section in question provides also for the inclusion of "all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to

the United States;" but this provision does not have the effect contended for by appellant. The subject of coverings is provided for *eo nomine* by the section, and it is reasonable to conclude that any kind of covering not included within the *eo nomine* provision for coverings was intended to be excluded from the section, rather than to be included by force of the general provision for costs, charges, and expenses. And this doubtless was the view taken by the Supreme Court in the Nichols case. For although this provision was not specifically discussed in the decision of that case, it can not be assumed that it was simply overlooked by the court.

This construction is consistent with the terms of prior enactments upon this subject. In section 24 of the act of June 30, 1864, it was provided that in ascertaining the dutiable value of imported goods there should be added "the value of the sack, box, or covering of any kind in which such goods are contained," and also all "costs and charges paid or incurred for placing said goods on shipboard, and all other proper charges specified by law."

The foregoing enactment was repealed by section 7 of the act of March 3, 1865.

By section 9 of the act of July 28, 1866, it was again provided that in ascertaining the dutiable value of imported merchandise there should be added the cost of transportation, with all expenses included, and also "the value of the sack, box, or covering of any kind in which such goods are contained." This enactment became section 2907, Revised Statutes.

The foregoing section, 2907, and also section 2908, Revised Statutes, were repealed by section 7 of the act of March 3, 1883, whereby it was provided that none of the "charges imposed by said sections" should be included within the dutiable valuation of merchandise, nor "shall the value of the usual and necessary sacks, crates, boxes, or covering of any kind be estimated as part of their value in determining the amount of duties for which they are liable."

It may be observed that the foregoing sections, whenever making specific provision for coverings, named only such as manifestly serve for dry or solid contents only, and that the present word "coverings" was at first used in the singular, "covering" being more plainly *ejusdem generis;* and furthermore, that the terms "costs," "charges," and "expenses" as used in this connection were distinguished from the value of the coverings.

The "costs" and "charges" of which these statutes speak, unless otherwise expressly stated, are the items of expense incurred by the importer in and about the purchase of goods, and afterwards, and before their arrival at the port of entry. They do not, unless specially mentioned, include the cost of the sack, box, or covering in which the goods are usually contained and purchased. And it may be admitted that when the statute declares "without more"—without qualification—that the dutiable value of

imported merchandise is "the actual market value or wholesale price" in the principal markets of the country whence the same is imported, that such value includes the cost of the sack, box, or covering in which it is usually contained and purchased. Cobb v. Hamlin (3 Cliff., 200). The cost or expense of the covering usual and necessary for the protection and transportation of an imported article from the place of purchase is, as a matter of fact, an element of its value at such place. And the only question in this case is whether or not Congress has said, without qualification, that the dutiable value of this cement is "the actual value or wholesale price" in London. And, *first*, although the "actual value" of an article in the country where purchased does, in the abstract, include the cost of the outside package in which it is contained and placed for shipment, yet it is plainly inferable from the terms of the legislation on the subject, as above stated, that whenever Congress has intended to include that expense in such value as a basis for estimating duties it has expressly said so. To go no further back than 1864, that act expressly provided that the "dutiable value" of goods should be their value on shipboard, to be ascertained by *adding* to their value at the place of growth, production, or manufacture, among other things, "the value of the sack, box, or covering of any kind" in which they are contained. The act of 1865 simply made the "dutiable value" of goods their "actual market value" at the period of exportation, and expressly repealed section 24 of the act of 1864, requiring the value of the "covering" to be considered in ascertaining such "market value," while the act of 1866 simply restored the rule of valuation prescribed by the act of 1864. Meyers v. Shurtleff, *supra;* Attorney General's opinion, *contra* (T. D. 6121); Oberteuffer v. Robertson (116 U. S., 499).

It therefore appears that prior to the enactment of the customs administrative law in 1890, the value of usual coverings or containers, whether of dry or liquid contents, under the general rule, was not to be included as an element in ascertaining the dutiable value of their contents for ad valorem assessment. By the act of 1890, only such coverings or containers as were affirmatively indicated therein were taken out of the foregoing general rule. Those so indicated were, first, "cartons, cases, crates, boxes, and sacks," which plainly did not include containers for liquids, and next, "coverings of any kind," restricted nevertheless by the context to the genus of dry coverings first named. It further appears that the subject of containers did not come within the provisions for "costs," "charges," and "expenses," in the light of the legislative history of those terms in this connection nor in the proper construction of section 19 taken alone.

Therefore, the court concludes that the decision of the Supreme Court in the Nichols case, above referred to, in effect covered the issue made in this case; and that the decision is not only supported by the great authority of that court, but also is based upon sound principles of construction, and should be followed by this court. That decision appeared in 1902; the merchandise involved in the present case was afterwards imported under the same administrative act as that construed by the court in that case. Under such circumstances the rule of *stare decisis* is entitled to weight, and should not be ignored in a review of the issue thus presented.

Upon these considerations the court *affirms* the decision of the board.