KRONFELD, SAUNDERS & Co. *et al. v.* UNITED STATES (No. 1246).[1]

GILDED WOODEN FRAMES AND PAINTINGS.

Where paintings have been admitted free of duty, the frames on these, when framed, have, by a long course of practice in the customs, recognized in law, been dutiable; and where paintings are dutiable and are imported in frames, these frames are not integral parts of the pictures and can not be deemed containers, either in themselves or by the rule *ejusdem generis*. The pictures and the frames are separable for tariff purposes.—United States *v.* Hensel (98 Fed., 418).

United States Court of Customs Appeals, April 14, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33227 (T. D. 33668).

[Affirmed.]

*Walden & Webster* for appellants.

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Frank L. Lawrence*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importations involved in this case consist of paintings in ordinary gilded wooden frames. Some of the paintings were assessed at 15 per cent ad valorem under paragraph 470 of the act of 1909 and the others were passed free of duty under paragraph 717, but in both instances the frames were separately assessed by the collector at 35 per cent ad valorem as manufactures of wood under paragraph 215. The appellant contends that where the paintings are dutiable the frames are dutiable at the same rate as part of the value of the paintings, and that where paintings are free the frames are also free. The board overruled the protest based upon these claims, and the importer appeals.

Treating first of such frames as were imported with the paintings admitted free of duty: The practice of the department, covering a long period of time, has been uniform and unvarying so far as we can dis-

cover. As early as 1866, under a provision of the act of July 22, 1862, admitting free of duty paintings the product of American artists residing abroad, the claim was made that the frames accompanying such paintings were likewise free. The Secretary of the Treasury ruled as follows:

Under this provision of the statute I find no sanction for the free admission of picture frames, although the same may form an integral part of the picture.

In 1877 (T. D. 3333) the department held that glazed frames inclosing antiques were dutiable, although the antiques were free.

In 1882 (T. D. 5303) it was held that frames of plaster casts were dutiable as manufactures of wood, although the casts were free because imported for educational purposes.

In 1887 (T. D. 8277) a plush-covered wooden frame was held classifiable as a manufacture of silk, separately from a bas-relief to which the frame belonged and with which it was imported, although the bas-relief was presumably free, being the work of an American artist.

Again in 1887 (T. D. 8006) it was said, referring to the previously quoted decision in 1866:

I have to inform you that the department's decisions of January 22, 1866, * * * which held in effect that frames subject to classification independently of the paintings to which they pertain is still in force and has been confirmed by various subsequent decisions.

And it was stated that the fact that frames were not separately specified in invoices does not affect their classification, but in such cases their value should be separated by the appraisers and the duty levied thereon according to the materials of which they may be composed.

In Hensel *v.* United States (99 Fed., 722) it was said:

Counsel for the Government shows by the citation of a great number of Treasury decisions since 1875 that duty has been repeatedly assessed on frames as manufactures of wood, where the paintings, for certain reasons, have been admitted free.

And the opinion concludes:

I think the general provisions of the act of 1894 for free entry of paintings which are works of art should not be so construed as to include ornamental frames such as those here in question.

It was further said in the case that these frames were designed for other purposes than to cover and protect the paintings and that they were designed to give additional attractiveness to the pictures.

Since the promulgation of this decision the substance of the provision for free entry of paintings has been reenacted, and the presumption is that the construction thus placed upon the law by the Treasury Department and by the court was adopted therewith. We conclude, therefore, that as to frames accompanying paintings

entitled to free entry the rule should be considered as settled, unless the contention of the importer that such frames are to be treated as containers within the rule laid down in United States v. Leggett (66 Fed., 300) is allowed. This question will be considered in connection with that relating to the duty goods.

As to the question of the frames accompanying dutiable pictures, the claims of the appellants are that the frames are either containers or cost charges and expenses. The evidence as to these frames is that offered by the importer, who called two witnesses. The substance of the testimony of the first witness is that it was customary to import paintings in the same condition as these in question with the frames on them—that is, paintings in frames; that they are not always so imported, but sometimes are unframed; and that the frames in question were the usual style of frames in which pictures are hung upon the wall.

The testimony of the other witness was substantially to the same effect, with the addition that when pictures are sold thus imported they were contained in frames, and in describing these frames he stated that they were gilded frames, and in answer to the question, "And they are designed for exhibition purposes with the picture, and not designed to protect the picture in transportation?" he replied, "Not for protection."

We think the board rightly held that these frames are not containers within the meaning of subsection 18 of section 28 of the tariff act of 1909, nor within the meaning of the term "containers" as used in connection with free-entry goods. While it may be difficult to define with exactitude the scope of the word "containers," the term should be limited in its application to articles which are designed and essential for the purpose of holding the article for importation or shipment. It is apparent that the frame of a picture bears no such relation to the picture itself. Either may be separately imported and often are.

The precise question was discussed by the Circuit Court of Appeals in United States v. Hensel (98 Fed., 418), in which case the court said:

The importers contend that a duty of 20 per cent ad valorem should be assessed on the framed paintings as an entirety—painting and frame together—or under section 19 of the act of June 10, 1890, on the theory that the frame is a case or covering of the painting, and to be reckoned as a part of the dutiable value of the painting. This last proposition commended itself to the Circuit Court. The section last cited provides, inter alia, that "If there be used for covering or holding imported merchandise * * * any unusual article, or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied * * *. upon such article at the rate to which the same would be subject if separately imported." Manifestly, these frames were designed for use otherwise than in the transportation of the pictures to the United States. They are ornamental, and are designed rather to add to the attractiveness of the pictures when exhibited

than to protect them against the risk of transport. It will not be necessary, however, to review the decisions bearing on this question of coverings, since Oberteuffer *v.* Robertson (116 U. S., 499, 6 Sup: Ct. 462; 29 L. Ed., 706), where the act of 1883, which imposed what was practically a penalty of 100 per cent, was construed; nor to discuss the argument advanced by appellee that, within the common or ordinary meaning of the word, a "painting" includes the frame in which it is bought, sold, transported, imported, and exhibited. It was held in Robertson *v.* Downing (127 U. S., 613, 8 Sup. Ct., 1330; 32 L. Ed., 271) that, "when there has been a long acquiescence in a regulation, and by it rights of parties for many years have been determined and adjusted, it is not to be disregarded without the most cogent and persuasive reasons." It appears that the Treasury Department has allowed frames containing pictures, which for some reason had been given free entry by Congress, to come in free with the pictures; but in the case of dutiable oil paintings the practice of assessing a separate and independent duty upon the frames has been followed by the Treasury Department continuously since 1866, and, so far as appears, has never been successfully attacked; nor, indeed, has it ever been presented to any court. We therefore conclude that the decision of the Circuit Court should be reversed, and the classification of the frames for duty purposes as manufactures of wood should be sustained.

The statement that the Treasury Department had been accustomed to allow frames containing pictures which had been given free entry to come in free with the pictures is shown to have been a misapprehension by the court. See Hensel *v.* United States (99 Fed., 722).

We think the reasoning of the court in the case quoted above is sound. It is urged, however, that a broader scope should be given to the word "containers," for the reason that the provision of the administrative act of 1890 was subject to the rule of *ejusdem generis*— see United States *v.* Peabody (3 Ct. Cust. Appls., 130; T. D. 32383)— but that since the enactment of subsection 18 of section 28 of the act of 1909 the provision has been broadened to include bottles, jars, and other containers. So, it is claimed, the rule of *ejusdem generis* has no application.

The decision referred to does not appear to rest upon the rule of *ejusdem generis*, but, as is well urged in the Government's brief, the purpose of the amendment in 1909 was to enlarge the law so as to include containers of nonsolids, the new language of the section being "casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers * * * whether holding liquids or solids." If the rule of *ejusdem generis* applied to the former condition it would equally apply under the amended statute, and the amended provisions are not such as to extend the scope or meaning of the paragraph so as to include such an article as frames of pictures.

Nor do we think the cost of the frame can be treated as "costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States." As before pointed out, the picture itself and the frame might be separately imported. The placing of the picture in the frame is not essential

to its packing, and, as testified to by the importer's witness, was not designed for protection.

The claim that these framed pictures are integral articles and can not be separated for the assessment of duty is answered by the fact that the frame and the picture may be sold separately—the picture may be sold without the frame—and if by adapting it to a particular picture it becomes an integral part of the article, it is still separable for tariff purposes. See United States *v.* Waterhouse (1 Ct. Cust. Appls., 353; T. D. 31452) and cases cited and United States *v.* Ranlett (172 U. S., 133).

The decision of the board is *affirmed.*