CASSELA COLOR CO. *et al. v.* UNITED STATES (No. 1560).[1]

COVERINGS, CONTAINERS OF SOLIDS, WHEN DUTIABLE WITH THEIR CONTENTS.

The dutiable value of dry colors, or paints in the form of a fine powder, imported in air-tight kegs, barrels, casks, and tins, includes the value of the containers under the tariff act of 1897, as shown by section 19, customs administrative act of June 30, 1890, as amended July 24, 1897.—Austin, Nichols & Co. *v.* United States (171 Fed., 79) and Austin *v.* United States (1 Ct. Cust. Appls., 465; T. D. 31508) distinguished from each other and from this case.

United States Court of Customs Appeals, December 3, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7600 (T. D. 35222).

[Affirmed.]

*Allan R. Brown* for appellants.

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

---

[1] Reported in T. D. 35975 (29 Treas. Dec., 689).

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The importations now before the court were entered under the tariff act of July 24, 1897.

The merchandise consisted of dry colors or paints in the form of a fine powder, which was imported in kegs, barrels, casks, and tins. The containers were all absolutely tight, so as to prevent the powder from sifting out and also to protect it from the moisture of the atmosphere. These are the usual containers for the imported merchandise.

It is conceded that the dry colors and paints in question were subject to a certain ad valorem rate of duty, and that the correct rate was applied by the collector in this case. The collector, however, in ascertaining the dutiable value of the merchandise, added the value of the containers to that of their contents and assessed the appropriate rate of duty upon the total valuation. The importers protested against this action of the collector, claiming that the value of the containers should not have been added in in arriving at the dutiable valuation of the merchandise.

The protest was submitted to the Board of General Appraisers and was overruled, from which decision the importers now appeal.

It appears therefore that the sole issue in the case is whether the dutiable valuation of the present ad valorem merchandise includes the value of the kegs, barrels, casks, and tins in which it was imported.

The answer to this question depends upon the construction which should be placed upon section 19, customs administrative act of June 30, 1890, as amended July 24, 1897, which reads as follows:

SEC. 19. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quantities, at the time of exportation to the United States, in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale, including the value of all cartons, cases, crates, boxes, sacks, and coverings of any kind, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subject if separately imported. That the words " value " or " actual market value " whenever used in this act or in any law relating to the appraisement of imported merchandise shall be construed to be the actual market value or wholesale price as defined in this section.

It will be observed that the foregoing section provides that all ad valorem duties shall be assessed upon the actual market value of the merchandise in the principal markets of the country from whence imported, including the value of "all cartons, cases, crates, boxes, sacks, and coverings of any kind, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

It should be noted that the coverings or containers thus specified are such only as carry dry or solid merchandise, and that such containers as kegs, barrels, casks, and tins, which usually carry liquid or semiliquid contents, are not mentioned in the section. The question, therefore, early arose whether the provision in question nevertheless applied to all ad valorem merchandise regardless of its character or the character of its containers.

This question came before this court in the case of Austin *v.* United States (1 Ct. Cust. Appls., 465; T. D. 31508), the merchandise being liquid or semiliquid ad valorem goods imported in wooden casks, hermetically sealed tins, and earthenware jars. The issue presented was whether under section 19, *supra*, the dutiable valuation of the merchandise would include the value of the containers in which it was imported. This court, following the decision of the Supreme Court in the case of United States *v.* Nichols (186 U. S., 298), held that the provision in question did not apply to the importations in the case, and that the dutiable valuation of the merchandise would not include the value of its containers.

The decision above cited was followed by the court in the case of United States *v.* Peabody (3 Ct. Cust. Appls., 130; T. D. 32383). That case related to ad valorem goods of liquid or semiliquid character, imported in barrels, metal drums, hermetically sealed tins, and earthenware jars. The court held that under section 19, *supra*, the dutiable valuation of the merchandise would not properly include the value of the described containers.

The facts in the present case, however, are not identical with those of the cases just above cited. It is true that the present containers are similar to those in the cited cases, being barrels, kegs, tins, etc., suitable for holding liquid or semiliquid contents. But, on the other hand, the merchandise actually imported in the former cases was liquid or semiliquid goods, whereas in the present case the merchandise is dry or solid goods. Since, therefore, under the provision in question, the coverings or containers of ad valorem merchandise are sometimes added in to find the dutiable valuation thereof, and sometimes are not, the question arises whether this difference of procedure properly results from a difference in the character of the merchandise itself or from a difference in the kind or character of the containers.

In coming to answer this question we must observe that section 19, *supra*, is not an enactment which purports to levy tariff duties upon different kinds of merchandise as such. Instead of that it is part of a customs administrative act only, and simply prescribes the method whereby the duties levied by other enactments may be collected. Therefore the recital therein of " cartons, cases, crates, boxes, sacks, and coverings of any kind," was not intended to be a levy of duty upon such articles as independent articles of merchandise. This is apparent from the fact that under the provision identical coverings may enter into the dutiable valuation of different importations bearing entirely different rates of duty. Furthermore, such coverings may enter into the dutiable valuation of merchandise bearing a given rate of duty, whereas if imported empty they might themselves bear an entirely different rate of duty, or be entitled to free entry. And furthermore, under the provision in question, a change in the rate of duty applicable to any kind of ad valorem merchandise would *ipso facto* result in a change in the rate of assessment upon the value of such covering or container when included within the dutiable valuation of such merchandise. The duty, therefore, which may incidentally be assessed upon the value of such coverings or containers under the provision in question is essentially a duty upon the ad valorem merchandise rather than upon the coverings or containers.

These considerations indicate that the character of the merchandise rather than the character or description of its coverings should determine the method of ascertaining market value under the provision, and the use of the words " cartons, crates, cases, boxes, and sacks " indicates a legislative intention to confine the operation of the provision to dry or solid merchandise. Accordingly under the section the dutiable valuation of dry or solid ad valorem goods would include the value of their containers, even though they may be such as usually contain liquid or semiliquid goods only.

It is true that under this interpretation of the section the value of barrels and like containers would be added to the value of their ad valorem contents for assessment in case their contents were dry or solid merchandise, whereas the same containers would not be so added in in case their contents were liquid or semiliquid merchandise. This may seem anomalous; but a greater anomaly would result from the adoption of the opposing view. For according to it the same ad valorem merchandise, as for example the present importations, would be assessable with duty inclusive of the value of its containers in case they were sacks or boxes, but exclusive of the value of its containers in case the containers were barrels or kegs. Inasmuch as the section in question was not primarily a duty-levying provision but rather provided a method of applying duties otherwise levied, that construction should be favored which would result

in a uniform assessment upon the same ad valorem merchandise, whether imported in boxes or barrels.

Since the present merchandise was a dry substance and was subject to ad valorem duty, the collector was right in adding the value of the containers to that of the merchandise in order to ascertain the dutiable valuation thereof.

It is contended by the importers that an interpretation identical with the foregoing was placed upon section 19, *supra*, by the Circuit Court of Appeals for the Second Circuit in the cast of Austin, Nichols & Co. *v.* United States (171 Fed., 79), and that this court in the case of Austin *v.* United States (1 Ct. Cust. Appls., 465; T. D. 31508), reached a different conclusion upon the question, and " practically reversed the Circuit Court of Appeals." The first part of this contention is certainly correct, for the Circuit Court of Appeals in the Austin, Nichols & Co. case, *supra*, adopted the interpretation of section 19, *supra*, which is made the basis of our present decision. But this court in the Austin case, *supra*, expressly pointed out that the merchandise then before it was liquid or semiliquid goods, whereas that before the Circuit Court of Appeals was reported to be dry or solid goods. The two cases were therefore distinguished because of the different kinds of merchandise severally involved therein. This will appear from the following quotation from the opinion of Judge·Barber in the cited case:

The Circuit Court of Appeals in the Nichols case (171 Fed., *supra*) attempted, as has been already seen, to distinguish between the containers in that and the Kimpton case by saying that the Kimpton case involved stone bottles used as containers of liquids, while the Nichols case related to tin cans and terrines used as containers of solids. This statement appears·to be based upon the record sent up from the Board of General Appraisers. The board, however, had not found that the merchandise was solid and not liquid, and it appears from their opinion that amongst such merchandise there were fruit, jam, pineapples, liquid gum, and sizing. It is apparent that the board did not consider this merchandise to be solid, some clearly could not have been, and the character of its containers mentioned in their opinion warrants the inference that it was substantially like the merchandise in the Nichols case now before us for determination. On this subject the board in the case now before us says in its opinion that " the question involved is precisely the same " as that passed upon by the Circuit Court of Appeals in the Nichols case.

Counsel for the United States in the case before us premises his argument with the statement that. some of the merchandise is a liquid, and the entire discussion of the case upon the part of counsel for both sides proceeds upon the theory that all the merchandise is liquid or semiliquid and all the containers water-tight and some of them hermetically sealed.

In view of all this we feel constrained to hold, either that the learned Circuit Court of Appeals was mistaken in the statement that the difference between the Kimpton case and the Nichols case, then before it, was that in the one case the merchandise contained was a liquid and the other a solid, or that the Nichols case so far as that aspect of it is concerned is not an authority here and that the Board of General Appraisers ought not to have so regarded it.

The issue subsequently submitted to this court in the Peabody case, *supra*, was essentially similar to that in the Austin case, *supra*, in respect to the character of the merchandise and its containers, and the decision was to the same effect.

A question appears in the record of the present case concerning the sufficiency of certain of the protests, but the conclusion above stated makes it unnecessary for the court to consider it.

It is proper to note that the provisions of section 19 of the tariff act of 1897, which are herein discussed, were amended by the tariff revisions of 1909 and 1913.

The decision of the board sustaining the collector's assessment is *affirmed*.