AMERICAN FRUIT GROWERS, INC., ET AL. *v.* UNITED STATES (No. 3973)[1]

---

[1] T. D. 48643.

United States Court of Customs and Patent Appeals, November 2, 1936

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for appellants.

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Daniel I. Auster,* special attorney, of counsel), for the United States.

[Oral argument October 14, 1936, by Mr. Allerton deC. Tompkins and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, overruling a large number of protests filed by appellants at the port of Chicago against the assessment of duty by the collector, upon large quantities of green peas in the pod imported from Mexico, at the rate of 3.9 cents per pound under paragraph 769 of the Tariff Act of 1930, as modified by Presidential proclamation, T. D. 45314.

Appellants in their protests claimed that said proclamation is invalid and that the merchandise is dutiable at 3 cents per pound as originally provided in said paragraph 769. Appellants further claimed that the collector erroneously calculated the dutiable weight of the merchandise, in that he included the weight of the pods therein, and that allowance should have been made for such weight in calculating the amount of the duty.

Said paragraph 769 reads as follows:

PAR. 769. Peas and chickpeas or garbanzos: Green or unripe, 3 cents per pound in the case of peas, and, in the case of chickpeas or garbanzos, 2 cents per pound; dried, 1¾ cents per pound; split, 2½ cents per pound; prepared or preserved in any manner, 2 cents per pound on the entire contents of the container.

The pertinent part of the Presidential proclamation, T. D. 45314, issued under the provisions of section 336 of the Tariff Act of 1930, reads as follows:

Now, therefore, I, Herbert Hoover, President of the United States of America, do hereby approve and proclaim an increase in the rate of duty expressly fixed in paragraph 769 of Title I of said act on peas, green or unripe, from 3 cents per pound to 3⁹⁄₁₀ cents per pound, the rate found to be shown by said investigation to be necessary to equalize such difference in costs of production.

The trial court held said proclamation was valid, and also held that the collector had correctly found the dutiable weight of the merchandise.

Judgment overruling the protests was accordingly entered, and from such judgment this appeal was taken.

Appellants' claim of invalidity of the Presidential proclamation is based upon the contention that the President, under the Constitution of the United States, has no right or authority to legislate or to amend or change the tariff laws as enacted by Congress, and that said proclamation violates the Constitution in these respects.

With respect to this contention the trial court in its decision said:

As to the first proposition the issue has been passed upon and decided adversely to the plaintiffs' contention in a number of cases. The latest expression of the court is found in the case of *United States* v. *Sears, Roebuck & Co.*, 20 C. C. P. A. (Customs) 295, T. D. 46086. Plaintiffs have produced no proof distinguishing the instant case from the earlier cases cited in *United States* v. *Sears, Roebuck & Co.*, *supra*. That claim is therefore overruled.

This contention has been so repeatedly decided by this court, and by the Supreme Court of the United States in the case of *Hampton* v. *United States*, 276 U. S. 394, that we do not deem further discussion necessary, and we affirm the holding of the trial court with respect thereto.

With respect to the second contention of appellants, that the collector erroneously included the weight of the pods in determining the dutiable weight of the merchandise, we find no error in the decision of the trial court.

Upon this branch of the case appellants introduced the testimony of five witnesses, and the Government introduced the testimony of four.

Appellants' claim rests upon the fact, shown by the testimony, that in the ultimate consumption of the merchandise the pods are thrown away and are worthless except as containers or coverings for the green peas, and that such pods are used only as a protective covering for the green peas. Appellants argue, therefore, that the term "Peas * * * Green or unripe," should be construed as excluding the pods, and that the pods are not included within the common meaning of the term "green peas."

We think that the testimony, both on behalf of appellants and the Government, establishes that, both commercially and commonly, the term "green peas" includes shelled green peas and peas in the pod. Indeed, we think that it is a matter of common knowledge that a purchaser of green peas pays a certain price per pound, which price includes the weight of the pods.

The following are some of the dictionary definitions of the word *pea:*

*Pea* * * * 1. * * * Garden peas, the seeds of the former species, have been grown since the beginning of the Christian Era; they are of countless

varieties, but of two general types, the smooth and wrinkled. Peas are usually eaten green, and in one race the succulent pods are also edible. The seeds of *P. arvense*, known as *field peas*, are used as food for stock.

2. The plant producing this seed. It is a tendril-climbing vine, with pinnate leaves, large stipules, and white or reddish-purple flowers followed by straight green pods. * * * *Webster's New International Dictionary*.

*Pea* * * * Peas are classed: (1) According to quality; * * * (2) According to the season; * * * (3) According to whether the pods are edible or not. * * * *Funk & Wagnalls New Standard Dictionary*.

*Pea.* As known to horticulturists, the pea is the seeds and plant of *pisum salivum* and its many forms, one of the Leguminosae, grown for its edible seeds and sometimes for the edible pods.

*   *   *   *   *   *   *

Whilst peas are grown mostly for their seeds, there is a race in which the thick soft green pods, with the enclosed seeds, are eaten.

*   *   *   *   *   *   *

*Bailey's Standard Cyclopedia of Horticulture*, vol. V, p. 2490.

The Dictionary of Tariff Information, published by the Tariff Commission in 1924, contains the following on page 557:

PEAS here referred to are of the field variety. They are grown for human food and for stock feed, for canning, forage, green manuring, and seed. The green garden pea is popular in the frèsh state; dried peas are used in soups and purées, and sometimes are baked like beans; split peas are served in soup, etc.

From the foregoing it seems apparent that the common meaning of the term "green peas" is broad enough to include the pods as well as the seeds. Certainly peas grown for stock feed, forage, and green manuring would include the pods.

The case of *Vitelli & Son* v. *United States*, 3 Ct. Cust. Appls. 171, T. D. 32460, involved the dutiable weight of garlic, which, as imported, consisted of the bulb and top of the plants. In its opinion the court held that the weight of the tops should be included and said:

* * * Garlic consists of the bulb and the top. This natural product is imported, and can not, as to any portion of it, be properly called tare, particularly as it is shown that the top serves the purpose of preserving the bulb and is sold as a part of the importation.

While it is true that in the case at bar the pods are not claimed to be tare, we think that the reasoning in the last-cited case is applicable here. Here it is established that the peas are imported and bought and sold in the pod, that the peas are not shelled before importation because the pod serves the purpose of preserving the peas and is sold as a part of the importation.

Appellants rely upon the case of *United States* v. *Amendola*, 5 Ct. Cust. Appls. 516, T. D. 35156, which involved the question of whether duty was correctly assessed upon the aggregate weight of certain Italian pine cones with the nuts attached thereto, under a statutory provision for "Nuts * * * shelled or unshelled, not specially

provided for * * *." This court held that the weight of such cones should not be included in calculating the duty upon the merchandise. The opinion states:

As appears from the foregoing definitions the shell of a nut is "a hard, outer cover of a fruit," being "a hard, leathery" cover which "does not open when ripe." Judged by these definitions the cones in question are not shells, nor are they parts of the nuts as such, since they do not serve in any way to inclose or cover the nut kernels. The pine nuts themselves, however, are inclosed or covered by shells like those of almonds or walnuts, except that they are not so thick and substantial. These shells grow upon the cones and contain the kernels as do the shells of other familiarly known nuts. It seems clear, therefore, that the cones are not shells and are not dutiable as such.

The distinction between the merchandise there involved and the merchandise here being considered is obvious. Here the pods do enclose and cover the peas or seed. In the case last cited, the cones were not shells or parts of the nuts as such, while in the case at bar the term "green peas" is commonly and commercially understood to include the pod.

The Summary of Tariff Information, 1929, contains the following on page 1408:

Imports.—In 1927, about 96 per cent of the green peas imported came from Mexico and 4 per cent from Canada. Statistics of imports of green peas in the pod follow:

Then follows statistics of importations, giving the year imported, quantity, value, duty collected, etc.

Upon page 1409 statistics are given of the prices per bushel hamper and per ton received by domestic producers of fresh green peas in the pod.

We have no doubt that when Congress used the term "Peas * * * Green or unripe," and provided that the same should be dutiable at a given rate per pound, it intended in the calculation of the duty thereon that the weight of the pods should be included.

Appellants make some contention that the pods are containers of the peas, and that it is the rule in customs jurisprudence that the usual coverings, containers, or holders of specific duty goods are not subject to duty at the rate assessed upon the article imported, and cases are cited in support of this proposition.

We have no hesitation in holding that pea pods are not containers in the same sense that such word is used in tariff statutes and customs law. In the case of Kronfeld, Saunders & Co. et al. v. United States, 5 Ct. Cust. Appls. 222, T. D. 34399, this court said:

* * * While it may be difficult to define with exactitude the scope of the word "containers," the term should be limited in its application to articles which are designed and essential for the purpose of holding the article for importation or shipment. * * * [Italics ours.]

Suffice it to say, upon this point, that it seems obvious that nature did not *design* pea pods for the purpose of holding the seed "for importation or shipment."

For the reasons stated herein, the judgment of the United States Customs Court is *affirmed*.