PERRY, RYER & Co. *v.* UNITED STATES (No. 669).[1]

1. YOUNG FUSTIC DYEWOOD UNDER TARIFF ACT OF 1897.

   Young fustic dyewood, cut or shredded into pieces, suitable to be packed in burlaps for shipment, has been thereby advanced in condition. The statutory provision of the act of 1897 relating to an advance in condition is unqualified and the importation of corresponding date was dutiable under paragraph 20 of that act.

2. YOUNG FUSTIC DYEWOOD UNDER TARIFF ACT OF 1909.

   But paragraph 559, tariff act of 1909, expressly provides for the free entry of such an importation, if not advanced in value or condition by any process or treatment whatever beyond that essential to the proper packing of it. This is the case here, and the rule of *stare decisis* does not apply. The importation of corresponding date was free of duty under tariff act of 1909.

United States Court of Customs Appeals, December 6, 1911.

APPEAL from Board of United States General Appraisers, Abstract 25204 (T. D. 31450).

[Affirmed as to part and reversed as to part.]

*Searle & Pillsbury (Wm. E. Waterhouse* of counsel) for appellants.

*Wm. L. Wemple*, Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of young fustic dyewood. The appellants imported considerable quantities of this wood both under the tariff act of 1897 and that of 1909. The protests brought before the court in this case involve shipments under both acts.

The collector classified the importations as drugs, namely, woods used expressly for dyeing, advanced in value so as to be dutiable under paragraph 20 of each act, and in accordance with this ruling the merchandise was duly assessed. The importers protested against that classification and contended that the importations should

---

[1] Reported in T. D. 32096 (21 Treas. Dec., 722).

properly be classified as drugs, namely, woods used expressly for dyeing, and not advanced in value or condition, and that as such they should be severally entitled to free entry under favor of paragraph 548 of the act of 1897 and paragraph 559 of the act of 1909. These several protests were heard together upon evidence by the Board of General Appraisers and were overruled. The appellants now pray for a reversal of the board's decision.

Inasmuch as the decision of this case depends in part upon the application of the several paragraphs above cited, they are here copied in full for convenience of reference.

Act of 1897:

20. Drugs, such as barks, beans, berries, balsams, buds, bulbs, bulbous roots, excrescenses, fruits, flowers, dried fibers, dried insects, grains, gums and gum resin, herbs, leaves, lichens, mosses, nuts, nutgalls, roots, stems, spices, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and woods used expressly for dyeing; any of the foregoing which are drugs and not edible, but which are advanced in value or condition by refining, grinding, or other process, and not specially provided for in this act, one-fourth of one cent per pound, and in addition thereto ten per centum ad valorem.

· 548. Drugs, such as barks, beans, berries, balsams, buds,.bulbs, and bulbous roots, excrescenses, fruits, flowers, dried fibers, and dried insects, grains, gums, and gum resin, herbs, leaves, lichens, mosses, nuts, nutgalls, roots, and stems, spices, vegetables, seeds aromatic, and seeds of morbid growth, weeds, and woods used expressly for dyeing; any of the foregoing which are drugs and not edible and are in a crude state, and not advanced in value or condition by refining or grinding, or by other process, and not specially provided for in this act.

Act of 1909:

20. Drugs, such as barks, beans, berries, balsams, buds, bulbs, bulbous roots, excrescenses, fruits, flowers, dried fibers, dried insects, grains, gums and gum resin, herbs, leaves, lichens, mosses, nuts, nutgalls, roots, stems, spices, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and woods used expressly for dyeing or tanning; any of the foregoing which are natural and uncompounded . drugs and not edible, and not specially provided for in this section, but which are advanced in value or condition by any process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, one-fourth of one cent per pound, and in addition thereto ten per centum ad valorem: *Provided,* That no article containing alcohol, or in the preparation of which alcohol is used, shall be classified for duty under this paragraph.

559. Drugs, such as barks, beans, berries, balsams, buds, bulbs, bulbous roots, excrescenses, fruits, flowers, dried fibers, dried insects, grains, gums, gum resin, herbs, leaves, lichens, mosses, nuts, nutgalls, roots, stems, spices, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and woods used expressly for dyeing or tanning; any of the foregoing which are natural and uncompounded drugs and not edible and not specially provided for in this section, and are in a crude state, not advanced in value or condition by any process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided,* That no article containing alcohol, or in the preparation of which alcohol is used, shall be admitted free of duty under this paragraph.

There are at least two kinds of fustic wood imported into this country for use in dyeing. One grows in the West Indies and in South America. It attains the growth of large trees and is imported in sticks 4 to 6 feet in length and 14 to 16 inches in diameter, weighing about 8 sticks to a ton. The wood of this species is cut up and the dye extracted under pressure, the trunk of the trees being the part most valuable for this purpose. The color obtained from this material is a clear yellow and is mostly used in dyeing cotton and woolen goods. This species of fustic is not involved in this case, and its description is brought upon the record by the appellants only to prevent the present importation from being mistaken for it by reason of their identity of names.

The fustic composing these importations is called "young fustic" and grows only in the eastern Mediterranean countries. It is exported at Trieste, in Austria. It grows only as a shrub or stunted, irregular tree. The roots and branches are the valuable parts of the plant as dyewood, the trunks furnishing but little such extract. The dyeing material is extracted from the wood by boiling it in an open vat; the color produced from it is a greenish yellow. The dye is almost exclusively used in coloring glove leather, and probably 80 per cent of all the young fustic imported into this country is used for that purpose by the glove industries in Fulton County, N. Y.

As has been stated, the wood in question comes from a shrub or small tree, and the roots and branches are the parts which are richest in dyeing properties. These roots and branches are generally gnarled, irregular, and jagged in shape, and before shipment the wood is reduced in size by a process of cutting or shredding. The material resulting from this process is packed in coarse burlap sacks and in that shape is brought into this country.

There is some dispute in the testimony as to the average size of the pieces which finally result from the shredding process and which make up the importations. The official sample is contained in a glass bottle and is composed in most part of pieces as small as filberts. On the other hand, the appellants dispute the correctness of this as a fair sample and in turn produce exhibits which contain pieces of mixed sizes, some being as small as the official sample, while others are slivers of much greater size.

The decision of this case depends entirely upon the construction and effect which is to be given to the process of cutting and shredding the wood as above referred to. The Government contends that this treatment, whereby the wood is reduced in size, takes it out of the free paragraphs above quoted and places it within the dutiable ones. On the other hand, the importers contend that the wood is entitled to free entry notwithstanding the fact that it is reduced in size before importation.

In as far as the importations are controlled by the act of 1897 there does not seem to be much room for controversy. Paragraph 20 of that act fixes a duty upon "drugs, such as * * * woods used expressly for dyeing, * * * which are advanced in value or condition by refining, grinding, or other process." And paragraph 548, the correlative paragraph of the same act, provides for the free entry of "drugs, such as * * * woods used expressly for dyeing * * * not advanced in value or condition by refining or grinding, or by other process."

The process above mentioned whereby the roots and branches of the fustic are cut and shredded into pieces as small even as those contained in the importers' exhibit, must certainly constitute an advance in the value and condition of the wood. The wood of the roots and branches is to be used expressly for dyeing; so soon as it is severed from the ground it comes to this first estate as wood used expressly for dyeing. It has a certain value and is in a certain condition when it is thus severed from the ground. That condition is substantially changed and that value materially increased when the wood is afterwards ground or cut into small fragments, for in the new condition it may be transported at less expense and it is also in a form better adapted to its final use. The statutory provision of the act of 1897 relating to an advance in value or condition from refining, grinding, or other process is unqualified; any advance whatever in value or in condition, which results from refining or grinding, or other process, brings the wood within the dutiable class defined by paragraph 20 of that act.

It therefore seems clear that the importations entering under the act of 1897 were not free of duty as dyewood which was "not advanced in value or condition by refining or grinding, or by other process."

It may also be noted in this behalf that in G. A. 3489 (T. D. 17172) the Board of General Appraisers passed upon an importation of similarly shredded fustic which was entered under the tariff act of 1894. Paragraph 16½ of that act provided for the free entry of such dyewood if not advanced in value or condition by refining or grinding or by other process of manufacture. The board held that the wood as thus reduced to fragments by some kind of shredding process was not entitled to free entry under the foregoing provision. The language of paragraph 20 of the act of 1897 is not less comprehensive than the provisions of paragraph 16½ thus construed by the board in so far as the present controversy is concerned. Upon the substantial reenactment of the earlier provision into the later one the board of course gave the latter the same construction as the former.

However, as to those importations which were entered under the tariff act of 1909 a much more serious question presents itself. Under the applicable paragraphs of that act the corresponding provisions

relating to advancement in value or condition are not so comprehensive and unqualified as are those of the former acts. Quite to the contrary, an advancement of such dyewood in value or condition by any process or treatment does not alone deny the article free entry if such advancement is essential to the proper packing of the wood or the prevention of decay or deterioration pending manufacture. The provision relating to proper packing of course covers and includes packing for transportation. A new element is thus introduced into the paragraph which was not before the board in the case above cited, relating to like importations under the act of 1894. Under the prior acts such an importation was denied free entry if it had been advanced at all in value or condition by refining, grinding, or other process. Under the act of 1909, however, such an importation is given free entry, notwithstanding such an advance in value or condition by any process or treatment, provided only the advance so made be essential to its proper packing, or, as applied to this case, its proper packing for transportation.

The importers maintain that the fustic wood herein involved comes within this provision, that it was impracticable to ship the natural roots and branches in their shape and condition when taken from the tree, and that they were reduced in size to such an extent only as was essential to their proper packing for transportation.

The Government contends to the contrary—that the reduction in size of the wood was not essential to proper packing for transportation and that it was not done for that purpose only, but that the wood was reduced in size chiefly for the purpose of better fitting it for the boiling process for which it was designed and by means of which its dyeing properties were to be extracted. The Government contends that the reduction of the wood was therefore not essentially a part of its packing for transportation, but was rather the first step taken in the process of manufacturing dyeing material from it.

The question involved in the case therefore virtually becomes a question of fact, namely, whether the reduction of the wood to its condition at importation was essential to its proper packing or not.

From the testimony and the exhibits it appears quite clear that it is not practicable to ship the fustic wood in question in its natural shape and condition. If it were shipped in bulk in that condition, the freight rates would be unreasonable; if it were packed in its natural condition in sacks, its jagged projections would tear open the sacks and the contents would be scattered and lost. Therefore it is clear that the wood must be reduced in size to some extent in order to pack it for transportation.

It is also true that any such reduction in size does at the same time put the wood in better condition for its final use. As has been stated, the process of extracting the dyeing material from the wood is by placing it in open kettles and boiling it. The kettles used for this

purpose are not large enough to contain the natural roots and branches of the fustic, and besides the smaller the pieces into which the wood is reduced the more speedily and economically may the boiling process be completed. Therefore, the importers have necessarily a double interest in reducing the size of the wood, first, in order to prepare it for shipment and, second, in order to add to its value as a commodity by better preparing it for its final use in the boiling kettles. However, in case the applied process reduces the wood only so far as to fit it for shipment with reasonable commercial economy in view of all the conditions and circumstances of the case, such process alone does not deprive the wood of free entry, even though incidentally the value of the wood is also thereby increased as a commodity by becoming better adapted to its final use.

It is apparent that it may at times be difficult to find the proper dividing line in this process, so as to say with certainty that thus far the reduction is essential to proper packing and that any additional reduction is chargeable to the preparation of the wood for its final manufacture. And in this case that difficulty is plainly present, for this importation touches the border line between the two classes. However, there are several considerations which lead to a reversal of the decision entered by the board against the importers. In the first place, there is a substantial disagreement concerning the size of the pieces to which the fustic was actually reduced for importation. The pieces produced as samples by the Government are quite small, but the importers produce much larger pieces and establish by the testimony that these are more correctly representative of the importation. It is plain from an examination of the exhibits that the pieces are dry and brittle and are cut in such a way that they easily crumble from handling. They therefore constantly tend to become smaller as they are examined, and this somewhat prejudices the importers' case. If the pieces when imported were of the size claimed by the importers, they would not seem to be beyond such a reduction as was essential to proper packing. In the next place, the reasons given by the board for its decision are important; they are contained in the following extract:

The article in question is the root, trunk, and branches or limbs of the fustic tree, cut, broken, shredded, or otherwise reduced to chips, and is used in the process of coloring glove leather, imparting a yellowish color to the leather. As far as name, use, and description of the merchandise, the board, in G. A. 3489 (T. D. 17172), held fustic of like character and similar in condition to be a dyewood advanced, and upheld the assessment. Under the doctrine of *stare decisis* it is incumbent upon the board to follow this decision unless the evidence in the case at bar, or the issue presented, differs materially from that which was the basis of the board's decision in G. A. 3489, *supra*. An examination of the records in both cases, however, discloses the fact that the fustic here in issue is identical in all respects with that covered by G. A. 3489, *supra*.

We find the merchandise to be advanced in value or condition and hold it dutiable as assessed.

It appears from the foregoing extract that the board found this fustic to be identical in character with that held to be dutiable under the act of 1894; and the board therefore similarly classified it under the act of 1909, by force of the rule of *stare decisis*. But the several acts contain entirely different provisions in relation to such an article. As has already been noted the earlier act refused free entry to such wood if it was at all advanced in condition; but the latter act allowed free entry, notwithstanding an advancement in the condition of the wood, provided only such advancement was essential to its proper packing. The issues presented by the two several cases are therefore essentially different, and the rule of *stare decisis* alone is not controlling.

The opinion as above quoted correctly states that the issues presented in the several cases must be substantially alike in order that the rule of *stare decisis* should apply; but in the decision which follows that rule is applied notwithstanding the fact that the several issues are actually different.

For these reasons, taken together, the court *reverses* the decision of the board in so far as it relates to the merchandise imported under the act of 1909.

*Modified.*

DE VRIES, Judge, did not sit in this case.