## SHELDON & CO. *v.* UNITED STATES (No. 1785).[1]

CHICLE, DESICCATED.

Chicle, the sap having been drawn from the tree and coagulated by artificial heat into hard chunks in Mexico, shipped to Canada and there ground and dried, the grinding and drying bearing no relation to transportation and being a process in the manufacture of chewing gum, known commercially as desiccated chicle, is dutiable under paragraph 36, tariff act of 1913, as chicle "advanced in value by drying, straining, or any other process or treatment whatever beyond that essential to the proper packing," and not as "chicle, crude."—United States *v.* Sheldon & Co. (2 Ct. Cust. Appls., 485; T. D. 32245) distinguished.

### United States Court of Customs Appeals, April 2, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7984 (T. D. 36788).

[Affirmed].

*Crim & Wemple (William M. Wemple* and *George C. Winne* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

[Oral argument Feb. 15, 1917, by Mr. Wemple and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The importation is of chicle and the appeal brings here for decision the issue whether or not the particular importation is "chicle, crude," or chicle "advanced in value by drying, straining, or any other process or treatment whatever beyond that essential to the proper packing" under the provisions of paragraph 36 of the tariff act of 1913. The Board of General Appraisers held it so processed as to be properly classifiable under the latter provision. The importers appeal and urge reversal of that decision. It satisfactorily appears from the record that the merchandise is originally the sap of the sapodilla tree, drawn therefrom in a liquid form about the consistency of cream, and then coagulated by artificial heat into hard chunks. The tree is indigenous to southern Mexico, British Honduras, and possibly other tropical or near tropical countries, the particular importation having apparently originated in Mexico. In this lumpy condition the particular importation was shipped from Mexico to the desiccating works of the importing firm in *Canada,* whence, after certain treat-

---

[1] T. D. 37123 (32 Treas. Dec., 398).

ments, it was imported into this country at the port of New York. It was imported to be made into chewing gum, and at the so-called desiccating works underwent confessedly two processes. Mr. J. C. Cox, employee of the importing firm, testified:

Q. Describe, if you please, the process by which the merchandise was brought into its present condition.—A. Ground by pulpers and dried; taken to kilns and dried up by artificial heat.

\*          \*          \*          \*          \*          \*          \*

Q. Do you in either case extract anything but moisture from the substance?—A. No, sir; we extract nothing but moisture from the substance. It is ground and the moisture extracted.

\*          \*          \*          \*          \*          \*          \*

Q. Now, then, you have testified about the mass being ground or pulped, what is that process?—A. Simply broken up and put through granulators or pulping machines.

\*          \*          \*          \*          \*          \*          \*

Q. Now, you have just said it was crude chicle in the cake form; what is it in the ground form?—A. In the state this is we call it *desiccated chicle*.

\*          \*          \*          \*          \*          \*          \*

Q. (By Mr. WEMPLE.) Is it advanced in quality any by this removal of the moisture?—A. Well, for *chewing gum purposes* it is.

\*          \*          \*          \*          \*          \*          \*

Q. Now, what is the object of removing the moisture?—A. In order that we may use it in chewing gum.

\*          \*          \*          \*          \*          \*          \*

Q. When you use artificial desiccation, do you dry it out to any particular degree of moisture?—A. We try to dry it out down to about—well, it might vary 3 to 5 per cent.

Q. Is there any reason for that? Does the 3 or 5 per cent have any bearing on the finished product or transportation?—A. Why, *it has not any bearing on transportation;* it would be more powdery, that's all. It would be harder to bag if it is too fine.

\*          \*          \*          \*          \*          \*          \*

Q. Now, you testified that the crude chicle was in the form of sheets or lumps?—A. Yes, sir.

Q. Did you import any in that condition?—A. Do we import?

Q. Yes.—A. Yes, sir.

Q. In that condition it enters into the trade of this country, doesn't it?—A. Yes, sir.

The appellants rely in support of their claim upon the case of United States v. Sheldon & Co. (2 Ct. Cust. Appls., 485; T. D. 32245). We do not think either the respective processings of the merchandise or the applicable provisions of law in that case the same as in this. On the contrary determinate differences occur. In that case gum resin was the subject of decision. The chips and foreign matter had been strained therefrom and the turpentine content driven off by artificial heat, so that the merchandise imported, gum resin, had simply been reclaimed from its natural condition, the applied processes serving only and were none other than necessary "to get it by itself" and did "not affect the article per se"; whereas in the present case the grinding or pulping together with the drying confessedly affected and changed the article per se, converting large lumps or cakes into

a powdered form—a different physical structure of a different name, "desiccated chicle." While grinding might not necessarily constitute a manufacture, when as here it is one of the processes necessary to be applied to manufacture chicle into chewing gum its application assuredly removes the chicle from the category of crude articles. While neither of these processes might necessarily exclude an article from being classified as crude, under their ordinary acceptation, the Congress here has expressly declared the application of the process of "drying" to chicle should carry it into the provision here applied by the board when not necessary to its proper packing. That it was not applied for the purpose of proper packing or freighting is expressly stated by the importers' witness, whose statement perfectly accords with the common sense view of the situation. Moreover, the witness further added that this drying was one of the necessary processes to be applied to chicle in the manufacture of chewing gum, thereby establishing its application one of the essential manufacturing processes for which the chicle is imported and not one for the purpose of transportation. Indeed, one's credulity is taxed to the extreme by that claim upon the state of this record. Concededly this merchandise originated in Mexico, was sacked and shipped hundreds of miles past New York into Canada to there be "desiccated" at the desiccation works of these importers. It was there pulverized, the water expelled, and the merchandise then shipped back to New York and entered in that condition for consumption. Unless the court believes that merchants ship their goods several thousand miles in order to prepare them for a shipment of several hundreds of miles—a mere fraction of the first distance and, as here, probably back over the original route—we must conclude this processing, at the desiccation works of the importers in Canada, whence this merchandise was imported into the country, was for a purpose other than and "beyond that essential to the proper packing."

The testimony and all facts of the record make it plain, we think, that both the "drying," which by the statute includes the chicle within the provision of law as assessed, and the pulping, each and both, were applied as necessary processes of the manufacture of chicle into chewing gum, and were not applied for the purpose of proper packing. The merchandise, therefore, was properly classified for dutiable purposes.

*Affirmed.*