UNITED STATES *v.* SWIFT & COMPANY

No. 8028.—Entered at New Orleans, La.
Entry No. 183.

(Decided July 18, 1951)

*David N. Edelstein*, Assistant Attorney General (*Joseph E. Weil* and *Daniel I. Auster*, special attorneys), for the plaintiff.
*Eugene R. Pickrell* (*Eugene R. Pickrell* and *Michael Stramiello, Jr.*, of counsel) for the defendant.

EKWALL, Judge: This is a collector's appeal for reappraisement of an importation of canned roast beef, packed in 12-ounce tins, ex-

ported from Argentina on September 30, 1941. The merchandise upon entry was placed in bonded warehouse and entry was made under paragraph 706 of the Tariff Act of 1930, the specific rate of duty deemed applicable at that time being 6 cents per pound, the ad valorem rate being lower. Upon withdrawal on November 18, 1941, the reciprocal trade agreement between the United States and Argentina, T. D. 50504, had become effective, which changed the dutiable rate to 20 per centum ad valorem. The importations were covered by four invoices. Upon entry, one lot was entered at $1.10 per dozen tins, another at $1.50 per dozen tins, and the remaining two lots at $1.70 per dozen tins, all less nondutiable charges. It is stated in the brief filed on behalf of the importer that the variance in the entered values was due to the fact that the purchase contracts were accepted at different times. The merchandise was appraised as entered.

Counsel entered into the following stipulation at the hearing:

(1) That the above mentioned appeal for reappraisement covers an importation of canned roast beef, 12 ounce tins, packed 24 tins to the case, exported from Argentina on September 30, 1941, and imported at the Port of New Orleans, Louisiana, on October 27, 1941 in the "SS Del Valle," as Entry No. WH 183.

(2) That the price at which merchandise, such or similar to the canned roast beef herein, was freely offered to all purchasers for export to the United States on and prior to September 30, 1941, in the principal markets of Argentina, in usual wholesale quantities, and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, was $1.70 per dozen tins, less non-dutiable charges of $0.011378 Argentine pesos per dozen tins equivalent to $1.68862 (United States) per dozen tins.

(3) That if the Court should hold that merchandise such or similar to the canned roast beef, the subject of this appeal for reappraisement, was freely offered to all purchasers in the principal markets of Argentine, in the ordinary course of trade, in usual wholesale quantities, for home consumption in Argentina on or about September 30, 1941, then such price would be Argentine peso 8.00 per dozen tins, net packed, which converted at the applicable undesignated rate of exchange of one Argentine peso equals United States dollars 0.237044 is United States dollars 1.89635 per dozen tins net packed.

(4) That the sole issue in this case is whether or not such or similar merchandise to the merchandise the subject of this appeal for reappraisement, was freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade for home consumption in Argentina on or about September 30, 1941, the date of the exportation of the canned roast beef, 12 ounce tins, the subject of this appeal for reappraisement.

The foregoing is made without prejudice to the rights of the parties hereto to offer evidence to supplement the above facts, subject to objections of the adverse party, if any.

On behalf of the plaintiff there were offered and received in evidence as exhibits A through D, certified reports of Government representatives.

The appraiser found an export value for the merchandise here involved. This is presumed to be the correct value and the burden of overcoming this presumption is cast upon the appealing party. *Golding Bros. Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 395, T. D. 46926. The presumption of correctness attaching to the amount of such export value has been overcome by the stipulation above set forth in which the parties litigant agree that the export value was $1.70 per dozen tins, less nondutiable charges of 0.011378 Argentine peso, which is agreed to be the equivalent of $1.68862 (United States) per dozen tins.

Inasmuch as the litigants have agreed that the sole issue is whether or not such or similar merchandise to the instant merchandise was freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade, for home consumption in Argentina on the date of exportation herein, the court will examine the evidence on this point. Plaintiff's exhibit A, being a report of an investigation as to the value of canned beef, including roast beef, manufactured and shipped by the Corporación Argentina de Productores de Carnes, shows home consumption sales of canned roast beef in 12-ounce tins as follows: In April 1941, 2 sales of 240 tins and 48 tins, respectively, at Argentine pesos 0.583, and 1 sale of 1 tin at Argentine pesos 0.58; in May of that year, 1 sale of 24 tins at Argentine pesos 0.333; in July, 1 sale of 240 tins at Argentine pesos 0.666, a price given as equivalent to Argentine pesos 8.00 per dozen tins; in October 1941, 192 tins in 1 sale at Argentine pesos 0.5833 per tin, which is stated to be the equivalent of Argentine pesos 7.00 per dozen tins; in December 1941, 1 sale of 382 tins at Argentine pesos 0.544.

Plaintiff's exhibit B states that this same corporation sells canned corned beef, brisket beef, and roast beef for local consumption, although very few sales of canned roast beef have ever been made. This report further states that the merchandise is reported to be identical to that exported to the United States. The principal market is stated to be Buenos Aires. Roast beef has been sold in 12-ounce tins, packed in cases of 24 and 48 tins. It further states that in normal times anyone of good credit risk can purchase canned beef in wholesale quantities, but that "at present, due to the scarcity of tinplate in this country and to their volume of export sales, the firm has decided to suspend local sales of these products, until such time as they may obtain tinplate in sufficient quantity to meet all sales requirements."

We therefore have evidence of one sale in July 1941 at Argentine pesos 8.00 per dozen tins and one sale in October of that year at what is stated to be the equivalent of Argentine pesos 7.00 per dozen tins. No sales are reported in September, the month in which the instant merchandise was exported.

As opposed to this the importer's (defendant's) exhibit 1, an affidavit of the canned meat sales manager of the exporting company, Compañía Swift de La Plata, S. A., having supervision of the sales for home consumption in Argentina and also sales for export of canned roast beef produced by that concern, states that from July 1, 1941, to July 1, 1942, that corporation did not offer or sell canned roast beef for home consumption in Argentina and that affiant knew of no offers for sale or sales during that period of canned roast beef for home consumption in Argentina.

In view of the stipulation of counsel above referred to, the remaining documentary evidence need not be discussed.

It is noted that plaintiff's exhibit B, above, states that the Corporación Argentina de Productores de Carnes sells canned roast beef for local consumption and that in normal times "anyone of good credit risk can purchase this merchandise in wholesale quantities, but that at present, due to the scarcity of tinplate in this country, and to their volume of export sales, the firm has decided to suspend local sales of these products, until such time as they may obtain tinplate in sufficient quantity to meet all sales requirements." This document was dated in August 1943 and does not state whether the period in September 1941 was a "normal" time. Moreover, it states that the principal *local* market is Buenos Aires. Whether this is the principal market in Argentina, is not clear. It is noted also that the writer uses the term "wholesale quantities," but fails to state that anyone of good credit risk can purchase in the *usual* wholesale quantities.

The burden of proof in this case rested on the plaintiff herein. In attempting to meet this burden, in this case to prove the existence of a foreign value, plaintiff must establish every element of foreign value as defined in the statute (section 402 (c), Tariff Act of 1930, as amended). *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, T. D. 43324; *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276; *United States* v. *Gane and Ingram, Inc.*, 24 C. C. P. A. (Customs) 1, T. D. 48264.

A careful consideration of the evidence produced on behalf of the plaintiff fails to establish the elements of foreign value as defined by the statute, section 402 (c), as amended, *supra*.

Upon the record I find as facts:

(1) That the merchandise consists of canned roast beef in 12-ounce tins, 24 tins to the case, and was exported from Argentina on September 30, 1941.

(2) That the appraiser found the basis of value to be export value, as defined in section 402 (d) of the Tariff Act of 1930.

As matter of law, I conclude:

(1)   That the plaintiff has failed to overcome the presumption of correctness attached to the finding of the appraiser as to the proper basis of value, viz, export value.

(2)   That such value is the agreed value of $1.70 per dozen tins, less nonduitiable charges of 0.011378 Argentine peso per dozen tins, which counsel agree is equivalent to $1.68862 per dozen.

Judgment will be rendered accordingly.