(Reap. Dec. 8198)

JUDSON-SHELDON CORPORATION } v. UNITED STATES
ARMOUR AND COMPANY

Entry No. 755231–1/3.

(Decided January 29, 1953)

Eugene R. Pickrell (Michael Stramiello, Jr., of counsel) for the plaintiffs.

Charles J. Wagner, Acting Assistant Attorney General (John J. Antus, special attorney), for the defendant.

EKWALL, Judge: This is an appeal for reappraisement of canned roast beef, packed in 12-ounce tins, 24 tins to the case, exported from Argentina on or about May 8, 1942, and imported at the port of New York on or about June 16, 1942.

The appeal was submitted upon a stipulation which provided, among other things, that the record and exhibits in the case of *United States* v. *Swift & Company*, 27 Cust. Ct. 407, Reap. Dec. 8028, be incorporated herein. It was further stipulated as follows:

3. That the canned roast beef designated on the consular invoice as "Star" brand was entered at the export value of $.166666 per pound ($.125 per tin),

F. O. B. Buenos Aires, plus ocean feight [*sic*] of $3,473.69 less nondutiable charges aggregating $7,660.99 and the canned roast beef designated on the consular invoice as "Rose" brand was entered at the export value of $.177778 per pound ($.133334 per tin), F. O. B. Buenos Aires, less nondutiable charges.

4. That the said "Star" brand and "Rose" brand canned roast beef were appraised by the appraiser at the Port of New York at the foreign value of 8.23 Argentine pesos per dozen tins, net packed, said pesos to be converted at the undesignated rate of exchange.

5. That the price at which merchandise, such or similar to the canned roast beef herein, was freely offered to all purchasers for export to the United States on and prior to the date of exportation of the merchandise herein in the principal markets of Argentina, in usual wholesale quantities, and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, was $1.70 per dozen tins, U. S. Currency, less nondutiable charges of 0.0381 Argentine pesos per dozen tins at the undesignated rate of exchange.

6. That if the Court should hold that merchandise such or similar to the canned roast beef, the subject of this appeal for reappraisement, was freely offered to all purchasers in the principal markets of Argentina, in the ordinary course of trade, in usual wholesale quantities, for home consumption in Argentina on or about May 8, 1942, then such price would be Argentine pesos 8.23 per dozen tins, net packed, which converted at the applicable undesignate rate of exchange of one Argentine peso equals United States dollars 0.237044 is United States dollars 1.95087 per dozen tins, net packed.

7. That the sole issue in this case is whether or not such or similar merchandise to the merchandise the subject of this appeal for reappraisement, was freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade for home consumption in Argentina on or about May 8, 1942, the date of the exportation of the canned roast beef, 12 ounce tins, the subject of this appeal for reappraisement.

The incorporated case, *United States* v. *Swift & Company, supra,* was a collector's appeal involving canned roast beef, packed in 12-ounce tins, 24 tins to the case, imported from Argentina on October 27, 1941. The merchandise was appraised by the appraiser on the basis of export value, but the collector claimed that a higher foreign value existed. It was held on the evidence presented that the plaintiff had failed to establish the elements of foreign value, as defined by section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and had failed to overcome the presumption of correctness attached to the finding of the appraiser as to the proper basis of valuation. The merchandise was, therefore, appraised by the court on the basis of the agreed export value.

In the instant case, the merchandise was appraised on the basis of foreign value and the importer has appealed, claiming that no foreign value existed and that the merchandise should be appraised on the basis of the agreed export value.

The importer claims that the decision in the incorporated case is controlling under the doctrine of *stare decisis*. *United States* v. *Peabody & Co.,* 3 Ct. Cust. Appls. 130, T. D. 32383; *Burstein &*

*Sussman* v. *United States*, 16 Ct. Cust. Appls. 282, T. D. 42871. However, whether or not that principle shall be applied is entirely within the discretion of the court and it need not be followed where the issues are essentially different. *Hertz* v. *Woodman*, 218 U. S. 205; *A. Stein & Co.* v. *United States*, 28 C. C. P. A. (Customs) 280, C. A. D. 155; *Perry, Ryer & Co.* v. *United States*, 2 Ct. Cust. Appls. 374, T. D. 32096. In the incorporated case, the burden was upon the Government to prove the existence of a foreign value, while in the case at bar the burden rests upon the importer to prove the non-existence of a foreign value. Since the issue herein is not the same as that in the former case, it will be considered by the court on its merits.

In order to meet their burden of proof, the plaintiffs rely upon the record in the incorporated case. The evidence there indicates that canned roast beef, such as or similar to that involved herein, was produced by several companies in Argentina, namely, Compañía Swift de La Plata, S. A.; Frigorifico Armour de La Plata, S. A.; S. A. La Blanca; Compañía Sansinena, S. A.; and Corporación Argentina de Productores de Carnes. According to an affidavit of Christopher Clark of Compañía Swift de La Plata, S. A., sworn to October 13, 1950, said company did not offer or sell canned roast beef for home consumption in Argentina during the period from July 1, 1941, to July 1, 1942. An affidavit of Earl Floyd Williams, assistant general representative of Armour & Co. in Buenos Aires, sworn to April 27, 1949, states that neither Frigorifico Armour de La Plata, S. A., nor S. A. La Blanca freely offered or sold canned roast beef such as or similar to "Star" brand roast beef for home consumption in Argentina during the period from July 1, 1941, to the date of the affidavit. Mr. Williams stated further, on information and belief, that no concerns in Argentina freely offered and sold such or similar canned roast beef for home consumption during that period. J. V. Christensen, general superintendent of Compañía Sansinena, S. A., said, in an affidavit sworn to August 9, 1949, that his company did not offer or sell canned roast beef for home consumption in Argentina during the period from July 1, 1941, to July 1, 1942, and, on information and belief, that no canned roast beef was offered or sold for home consumption during that period.

As to the product of Corporación Argentina de Productores de Carnes, an affidavit of Jose Jorge Diaz Herrera, sales manager, sworn to November 7, 1950, states as follows:

7. That from January 1, 1941 to and including December 31, 1942, COR-PORACION ARGENTINA DE PRODUCTORES DE CARNES did not offer for sale or sell canned roast beef for home consumption in Argentina in the ordinary course of trade.

8. That from January 1, 1941 to and including December 31, 1942, CORPO-RACION ARGENTINA DE PRODUCTORES DE CARNES did make sporadic

sales of 655 tins of canned roast beef for home consumption in Argentina, in July, September, October and November of 1941, and in January, April and July of 1942, outside of its ordinary course of trade, in that said sales consisted of canned roast beef not offered to all purchasers and only offered to occasional buyers.

9. That on such occasions, from January 1, 1941 to and including December 31, 1942, as such canned roast beef described in Paragraph 7 above was on hand in the plant of CORPORACION ARGENTINA DE PRODUCTORES DE CARNES in Argentina, a listing thereof was included in the price lists issued by said CORPORACION ARGENTINA DE PRODUCTORES DE CARNES, and these price lists were made available to only those few purchasers who had previously indicated an interest in the purchase of such merchandise.

According to information obtained by Thomas L. Hughes, American counsel general in Buenos Aires, set forth in a report to the Secretary of State, dated August 23, 1943, Corporacion Argentina de Productores de Carnes did sell canned roast beef for local consumption, although very few sales were made. Said company stated that in normal times anyone of good credit risk could purchase such merchandise in wholesale quantities, but that at present, due to the scarcity of tinplate and to the volume of export sales, it had suspended local sales.

A list of local sales by said company during the period from November 1939 to May 1943 was subsequently submitted to the Secretary of State by the consul general. No sales of canned roast beef were shown from November 1939 to February 1941; nine sales were made in 1941 and four sales in 1942. The sale nearest the date of exportation herein (May 8, 1942) took place in March 1942 and was in the amount of 12 tins.

This list is the only evidence of sales of canned roast beef for home consumption at or near the time of exportation of the within merchandise. According to the affidavit of Jose Jorge Diaz Herrera, such sales were sporadic, outside the ordinary course of trade, and the merchandise was not freely offered to all purchasers. Although a few more sales are set forth on the list furnished by the consul general than are referred to in the affidavit, there is nothing on the list to indicate that the merchandise was freely offered to all purchasers. The fact that the sales were infrequent and were for the most part in small quantities tends to support rather than to contradict affiant's statement to the effect that the merchandise was not freely offered to all purchasers in the ordinary course of trade. Such sales do not establish a foreign market value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended. *United States* v. *Kresge Co. et al.*, 26 C. C. P. A. (Customs) 349, C. A. D. 39; *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129.

On the record presented, plaintiffs have established *prima facie* that no foreign value existed for such or similar canned roast beef at the time of exportation of the within merchandise. Under the stipu-

lation entered into between the parties, an agreed export value is set forth. In the absence of a foreign value, said export value is the proper dutiable value of the merchandise at bar.

Therefore, I find as facts:

1. That the merchandise involved herein consists of canned roast beef, packed in 12-ounce tins, 24 tins to the case, exported from Argentina on or about May 8, 1942, and imported on or about June 16, 1942.

2. That the canned roast beef designated on the consular invoice as "Star" brand was entered at the export value of $0.166666 per pound ($0.125 per tin), f. o. b. Buenos Aires, plus ocean freight of $3,473.69, less nondutiable charges aggregating $7,660.99, and the canned roast beef designated on the consular invoice as "Rose" brand was entered at the export value of $0.177778 per pound ($0.133334 per tin), f. o. b. Buenos Aires, less nondutiable charges.

3. That the said "Star" brand and "Rose" brand canned roast beef were appraised by the appraiser at the port of New York at the foreign value of 8.23 Argentine pesos per dozen tins, net packed, said pesos to be converted at the undesignated rate of exchange.

4. That the price at which merchandise, such as or similar to the canned roast beef herein, was freely offered to all purchasers for export to the United States on and prior to the date of exportation of the merchandise herein in the principal markets of Argentina, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, was $1.70 per dozen tins, United States currency, less nondutiable charges of 0.0381 Argentine pesos per dozen tins, at the undesignated rate of exchange.

5. That canned roast beef such as or similar to that involved herein was not freely offered to all purchasers in the principal markets of Argentina, in the ordinary course of trade, in the usual wholesale quantities, for home consumption in Argentina on or about May 8, 1942.

I conclude as a matter of law:

1. That there was no foreign value for the canned roast beef involved herein, as that term is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

2. That export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise involved herein and that said value is $1.70 per dozen tins, United States currency, less nondutiable charges of 0.0381 Argentine pesos per dozen tins, at the undesignated rate of exchange.

Judgment will be rendered accordingly.